UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10222-RWZ

BACK BAY SPAS, INC.

v.

441 STUART STREET ASSOCIATES, LLC, *et al.*

ORDER and MEMORANDUM

October 1, 2010

ZOBEL, D.J.

Defendant 441 Stuart Street Associates ("Associates") purchased a property at 441 Stuart Street in Boston with the intent of converting it into condominiums (the "Project").  Plaintiff Back Bay Spas ("Back Bay"), a tenant in 441 Stuart, entered into a letter agreement with Associates to purchase as a condominium the space it was then renting.  The terms of this letter agreement were not fulfilled, no closing took place, Associates defaulted on a loan financing the Project, and the lending bank ultimately foreclosed.  Back Bay brings this suit for specific performance of the letter agreement. Defendant 441 Stuart Marketing, LLC ("Marketing"), the current owner of 441 Stuart St., moves for summary judgment and the FDIC, a "necessary party" to this litigation, moves to dismiss.

## I.    Background

Associates purchased 441 Stuart on May 20, 2004, for $37.5 million.  The developer closed on a $42 million construction loan with Corus Bank (the "Bank") on

August 12, 2004, and the Bank recorded a mortgage the following day.

The construction loan agreement ("Loan Agreement") and mortgage placed restrictions on Associates' ability to develop and alienate the property.  All condominium documents had to be approved, in writing, by the Bank before recording. (Loan Agreement § 11.1, Docket # 11 Ex. 2.) The Loan Agreement specified a minimum sale price for condominium units, and required the Bank's written approval, bound by no requirement of reasonableness, if the actual price paid was less than 85% of the minimum sale price.  (Id. at § 11.6.)  Loan Agreement provisions could be waived only in writing.  (Id. at § 15.6).  The mortgage similarly specified that the Bank consent in writing to any sale.  (Mortgage § 2, Docket # 11 Ex. 3.)

Associates was required to obtain necessary permits and commence construction prior to March 31, 2005, and substantially complete the project by March 31, 2007.  (Loan Agreement § 10.3(a).)  The Bank was not obligated to advance funds for development of the building until a construction contractor was hired (id. at § 7.2), a detailed construction schedule prepared (id. at § 7.5), and the Bank approved a budget (id. at § 7.8).  Associates did secure a zoning variance on March 30, 1995, but otherwise failed to comply with deadlines and preconditions for funding.  The bank stopped advancing funds in the summer of 2005.

### A.    The Letter Agreement

 Back Bay Spas has operated a health club at 441 Stuart in rented space since 1995 and holds renewal options through May 31, 2025.  It appealed the Associates zoning variance shortly after it was granted, which appeal delayed any further

development of the Project.  On October 21, 2005, Associates and Back Bay Spas entered into a letter agreement.  Associates agreed to sell to Back Bay the space the health club then occupied plus some additional space (the "Unit") for $6,550,000, a nearly 40% discount from the Loan Agreement minimum sale price.  In return, Back Bay agreed to withdraw the zoning appeal.  The Bank was not a signatory to the letter agreement, prior approval was not requested, and the Bank never gave written consent to the sale of the Unit.

At the time the letter agreement was signed, no condominium documents had been recorded and the Unit that Associates agreed to sell did not yet exist.  Associates filed a condominium master deed eight months later, on June 21, 2006.  The Bank's prior consent was not requested and no written consent was given.  The Bank was never requested to release the mortgage in respect to the Unit.

A dispute developed between Back Bay and Associates after the letter agreement was signed regarding the meaning of terms in the agreement and the wording of purchase and sale documents.  Back Bay had already incurred expenses in anticipation of purchasing the unit.  Associates informed plaintiff in the spring of 2006 that no closing date would be scheduled until all necessary documents were agreed to and the Bank consented to the sale, subordinated the mortgage to the condominium master deed, and released the mortgage as to the Unit.  Back Bay responded with this lawsuit, filed in September 2006 in Massachusetts Superior Court.  The complaint sought specific performance of the letter agreement and alleged breach of contract and

3

violation of Mass. Gen. Laws ch. 93A by Associates and defendant VEF V Holdings, LLC, a part owner of Associates.  The Bank was named as a necessary party.

### B.    Subsequent Developments

The Bank agreed to three extensions of the original loan maturity date of July 31, 2007, the first to January 31, 2008, the second to May 30, 2008, and the third to December 31, 2008.  None of the extensions altered the amount of the loan or the rate of interest.  (Docket # 11, Exs. 13-15.)  Associates did not repay the outstanding principal and in January 2009, the Bank declared the loan to be in default.  The Bank was the winning bidder at a public auction and created Stuart Marketing to take title to the property.

Plaintiff amended the complaint in Superior Court in July 2009, adding a count for specific performance against Marketing.  The Bank failed and the FDIC was appointed receiver on September 11, 2009.  As a result, the FDIC replaced the Bank as a "necessary party" in this action and it removed the lawsuit on February 10, 2010, to this court.

## II.    Marketing's Motion for Summary Judgment

Summary judgment will issue when "there is no genuine issue as to any material fact and . . .  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. The burden is on the party opposing a motion for summary judgment to set out specific facts showing a genuine issue.  Id.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for

trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u> 475 U.S. 574, 587 (1986)

(internal quotation marks omitted)

As a general rule, a foreclosure on a mortgage extinguishes all interests junior to

the mortgage, <u>see</u> Mass. Gen. Laws ch. 244, § 14; <u>Moloney v. Bos. Five Cents Sav.</u>

<u>Bank FSB</u>, 663 N.E.2d 811, 814 (Mass. 1996).  Thus, whatever interest was created by

the letter agreement and lis pendens, both of which postdate the mortgage, would be

wiped out by the Bank's foreclosure.  Plaintiff argues that its interest nonetheless

survives for any of three reasons: (1) the interest is senior to the mortgage

modifications which extended the loan repayment term; (2) the junior interest is

preserved by statute; and (3) equitable estoppel prevents Stuart Marketing from

opposing this lawsuit to enforce the agreement.

### A.      Mortgage Amendments

The three extensions of the mortgage maturation date all postdate the letter

agreement and lis pendens, as does the filing of the condominium master deed.  A

modification to a senior mortgage cannot prejudice the rights or impair the security of a

junior interest, without the latter's consent, and retain seniority.  <u>See</u> <u>Shane v. Winter</u>

<u>Hill Fed. Sav. & Loan Ass'n</u>, 492 N.E.2d 92, 95 (Mass. 1986).  As the mortgage

amendments did not alter any of the terms relating to the amount of the loan or the rate

of interest, and plaintiff identifies no prejudice, the mortgage retained seniority after the

amendments.  <u>See</u> <u>E. Bos. Sav. Bank v. Ogan</u>, 701 N.E.2d 331, 335 (Mass. 1998) ("A

second mortgagee . . . accepts risks inherent in that security.  These include, for

instance, a renewal or an extension of time for payment on the original mortgage.").

B.    **Massachusetts Statute**

In the event of a foreclosure upon a condominium development, the
lender taking over the project shall succeed to any obligations the
developer has with the unit owners and to the tenants, except that the
developers shall remain liable for any misrepresentation already made
and for warranties on work done prior to the transfer.

Mass. Gen. Laws ch. 183A, § 22.

The parties disagree as to whether this statute impliedly overturns the principle

that junior interests are extinguished by a foreclosure, such that Stuart Marketing could

be bound by condominium-related obligations incurred by Associates even though the

condominium master deed was recorded after the mortgage.  The court need not

resolve this dispute, however, because Marketing has not violated the mandate "to

honor any obligations . . . with the unit owners and to the tenants."  Back Bay does not

allege any breach of its rights as a tenant, and the company brings this lawsuit because

it is not a unit owner.  (See, e.g., Am. Complaint 19-20 at ¶ 4(c), (e), Docket #1 Ex. B.)

C.    **Equitable Estoppel**

Plaintiff argues that estoppel would prevent the Bank from arguing there was no

consent to the letter agreement and Marketing, the successor in interest, is likewise

bound.[1]  Estoppel requires "(1) a representation intended to induce reliance on the part

of a person to whom the representation is made; (2) an act or omission by that person

---

[1]Plaintiff briefly raises a second equitable argument, equitable subordination.
Massachusetts courts may act in equity to adjust the priorities of lienholders.  See
generally E. Bos. Sav. Bank, 701 N.E.2d at 334-35.  This argument does nothing to
help plaintiff's cause.   Plaintiff is not merely asking the court to subordinate the
mortgage to the lis pendens; the requested relief requires the court to extinguish the
Bank's mortgage.  Subordinating the mortgage does not address the underlying issue,
discussed below, as to whether the Bank consented to the letter agreement.

in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 858 N.E.2d 699, 711 (Mass. 2006). Silence may constitute a representation if there is a duty to speak. Marsh v. S. M. S. Co., 194 N.E. 97, 99 (Mass. 1935); see Dunkin Donuts Inc. v. Panagakos, 5 F. Supp.2d 57, 62 (D. Mass. 1998). "[T]he party asserting the estoppel theory has a heavy burden to prove that all three elements are present." Sullivan, 858 N.E.2d at 712 (internal quotation and alteration marks omitted).

It is undisputed that Corus Bank did not communicate with plaintiff (Pl.'s Responsive Statement of Facts ¶ 47, Docket # 18), and plaintiff's argument that the Bank had some affirmative duty to clarify the status of the Project is belied by the terms of the Loan Agreement and mortgage, the undisputed fact that Back Bay had notice the Bank's written consent was required, and the evident lack of progress on the development.

The Loan Agreement specifies that the Bank must give prior written consent to any agreement to sell condominium units and to any waiver of loan provisions, and it includes a minimum price below which the Bank may withhold consent, even unreasonably. The mortgage references the Loan Agreement and similarly prohibits any sale of the condominium property without written consent. Plaintiff had notice of the terms of the mortgage because it was recorded.

While plaintiff argues that the Bank consented by silence, the mortgage and Loan Agreement explicitly require written consent, Associates verbally disclosed that consent was required (Pl.'s Responsive Statement of Facts ¶ 34), and the agreed price

was substantially below the minimum price specified in the Loan Agreement.   There is

no evidence that the Bank affirmatively communicated its consent, in writing or

otherwise.  To the contrary, Associates, the other signatory to the Loan Agreement and

mortgage, specifically acknowledged the lack of consent in correspondence with the

Bank months after the letter agreement was signed, even though it was admittedly

obligated to sell the condominium unit to Back Bay and therefore required the Bank's

consent.  (July 17, 2006 Letter, Docket # 12 Ex. A.)

It is significant that when the letter agreement was signed the Bank was no

longer advancing funds and there was no building permit, construction schedule, or

construction contract for work on the Project.  (Pl.'s Responsive Statement of Facts

¶ 43.)  Further, there was not yet a condominium to purchase, as the condominium

master deed had not yet been filed (id.).  While a master deed was eventually filed and

a building permit eventually issued, the project otherwise remained in limbo.  Given

these facts, it was unreasonable for plaintiff to infer consent from silence, as it was

apparent from the day the letter agreement was signed until the day this lawsuit was

filed that the project faced significant, and ultimately insurmountable, obstacles.

### D.      Fed. R. Civ. P. 56(f)

Plaintiff asks the court to deny or continue the summary judgment motion

because the Bank did not provide, prior to the close of discovery, all required

information relating to the issue of the Bank's consent to the letter agreement.  The

Bank responded to these same allegations by affidavit in the Superior Court and stated

that it had produced all documents responsive to plaintiff's document requests.

8

(Docket # 24, Ex. B).  Plaintiff's request for a Rule 56(f) denial or continuance is denied, and Marketing's motion for summary judgment is allowed.

## III.    FDIC Motion to Dismiss

Plaintiff seeks no relief from the FDIC and asserts that the entity "remains a necessary party only to the extent it must be a party to the case in order for Back Bay Spas to prove its right to specific performance from the current landowner."  (Pl.'s Mem. in Opp. 4, Docket # 28.)  Because the court has granted summary judgment in favor of the current landowner, Marketing, the FDIC is no longer a "necessary party" to this litigation.  The motion to dismiss is allowed.

## IV.    Conclusion

Defendant Marketing's motions for summary judgment (Docket # 8) and leave to file excess pages (Docket # 23) are ALLOWED, the latter reluctantly.  Necessary party FDIC's motion to dismiss (Docket # 26) is ALLOWED.


___October 1, 2010_____                    _____/s/Rya W. Zobel_____
           DATE                                                    RYA W. ZOBEL
                                                        UNITED STATES DISTRICT JUDGE